IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DINAH MILLENDER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-895-AMG |
| ) | |
| **KILOLO KIJAKAZI,** Acting ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Dinah Millender ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 8, 9), and the parties have fully briefed the issues (Docs. 14, 21).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 16, 17). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.      The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History

Plaintiff filed an application for DIB on July 29, 2019, alleging a disability onset date of November 1, 2018. (AR, at 631, 634). The SSA denied the application initially and on reconsideration. (*Id*. at 641, 656). Then an administrative hearing was held on January 26, 2021. (*Id*. at 590-630). Prior to the hearing, Plaintiff amended her alleged disability onset date to September 1, 2019. (*Id*. at 829). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 8-33). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-7). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

### III.     The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2019, the amended alleged onset date. (AR, at 13). At Step Two, the ALJ found that Plaintiff had the following severe impairments: "rheumatoid arthritis; obesity; osteoarthritis of the right knee; bronchitis; headaches; and fibromyalgia." (*Id*. at 14). At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 15). The ALJ then determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently balance on flat surfaces and frequently stoop, kneel, and crouch. She can never crawl and never climb ladders, ropes, or scaffolds. The claimant must avoid unprotected heights and unprotected moving mechanical parts. She must avoid concentrated exposure to pulmonary irritants such as dust, fumes, and chemicals.

(*Id*. at 17). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (*Id*. at 25). At Step Five, however, the ALJ found when "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as a document preparer, a surveillance system monitor, and an information clerk. (*Id*. at 25-26). Thus, the ALJ found that Plaintiff had not been under a disability since September 1, 2019. (*Id*. at 26).

**IV.     Claims Presented for Judicial Review**

On appeal, Plaintiff raises one issue: that despite finding Plaintiff's rheumatoid arthritis severe at Step Two, "in formulating the RFC, the ALJ failed to include any limitations resulting from [Plaintiff's] Rheumatoid Arthritis in her shoulders, without any explanation as to why." (Doc. 14, at 3).[3]  Plaintiff argues that "[t]his was harmful error requiring remand, because substantial evidence supports the needs for shoulder limitations in the RFC." (*Id*. at 3-4).  In response, the Commissioner argues that the RFC was supported by "[s]ubstantial evidence in the form of the objective medical evidence, Plaintiff's self-reported activities, and the prior administrative findings of state agency medical consultants." (Doc. 21, at 4-5).

**V.      The ALJ's Formulation of the RFC With Regard To Plaintiff's Rheumatoid Arthritis in Her Shoulders Is Supported By Substantial Evidence.**

In formulating the RFC, the ALJ summarized Plaintiff's record and included multiple references to the rheumatoid arthritis in her shoulders and related limitations. The ALJ considered the statements by Plaintiff in her function reports and her hearing testimony relating to her shoulders, including that her "impairments affect her ability to lift" and "reach;" that she "has muscle spasms in her . . . shoulders;" and that she could "lift about ten pounds." (AR, at 18). The ALJ discussed Plaintiff's statements about her daily activities, including that "[s]he prepares her own meals in the microwave.  She

---

[3] Although Plaintiff's rheumatoid arthritis affected her feet, knees, elbows, shoulders, and neck, Plaintiff specifically confines her argument to issues relating to her shoulders. (Doc. 14, at 4 n.1).

washes dishes, but must sit in a chair. She takes her laundry to the laundromat. She is able to care for her dog. She is able to drive. She shops in stores once or twice a week." (*Id*.)

The ALJ then extensively discussed the objective medical evidence. (*Id*. at 19-22). She considered a September 9, 2019, visit with Shannon Ballou, APRN, wherein Plaintiff "reported that she had been diagnosed with rheumatoid arthritis," that she experienced unspecified "fatigue, joint paint, and swelling," that she had been previously "prescribed Norco for her chronic pain," but she showed normal motor strength upon examination. (*Id*. at 19) (citing AR, at 1487-88). The ALJ considered a December 10, 2019, follow-up visit with Ms. Ballou, wherein Plaintiff "state[d] she recently started having pain in [her] shoulders and elbows as well" but reports "doing well overall." (*Id*. at 20, 1627).

The ALJ considered a December 18, 2019, visit with rheumatologist Tommie Simon, M.D., where Plaintiff reported she had chronic pain in her shoulders due to her rheumatoid arthritis, but physical examination showed Plaintiff's "shoulder had full range of motion, no swelling, and no tenderness," and it was noted that Plaintiff began taking Methotrexate to treat her chronic pain. (*Id*. at 20-21) (citing AR, at 1551-55, 1586). The ALJ considered a June 9, 2020, follow-up visit with Dr. Simon, wherein Plaintiff reported "[b]ilateral shoulder pain" relieved by Plaintiff "rais[ing] her right arm," but Dr. Simon's physical exam showed Plaintiff's shoulder was "non tender to palpitation, no swelling, and limited range of motion," and Plaintiff began taking Humira to treat her chronic pain. (*Id*. at 21, 1576, 1579-80).

The ALJ considered an August 3, 2020, visit with Ms. Ballou in which Plaintiff reported shoulder pain, and physical examination showed Plaintiff had tenderness to

palpation of the shoulders and decreased range of motion but "four out of five strength in the right upper extremity" and "five out of five strength in the left upper extremity," and a follow-up physical examination on October 14, 2020, showed the same. (*Id.*) (citing AR, at 1617-18, 1757-59). Finally, the ALJ considered a September 9, 2020, visit and December 2020 follow-up visit with Dr. Simon, where Plaintiff presented with "limited range of motion of the shoulders" but otherwise appeared healthy and in no acute distress. (*Id.* at 21-22) (citing AR, at 1867-73, 1902-08).

The ALJ considered the findings of state agency medical consultants Karl Boatman, M.D., and Ronald Painton, M.D., and found them "partially persuasive" and "somewhat persuasive," respectively, as they were only "partially" and "not fully consistent with the overall record," which the ALJ found to indicate <u>more</u> limitations than those opined by the doctors. (*Id.* at 23) (citing AR, at 633-41, 644-56).

The ALJ considered the medical opinion of Ms. Ballou, including the opinions that Plaintiff "could occasionally lift up to ten pounds, never carry any weight," "could never reach overhead" and "occasionally reach all other directions," to be "not persuasive" as unsupported by Ms. Ballou's own treatment notes. (*Id.* at 24) (citing AR, at 1909-15). The ALJ further stated that Ms. Ballou's

> findings are not fully consistent with the overall record. The record does not support the need for such extreme **lifting, carrying**, sitting, standing, walking, or postural limitations, it does not show the need for a cane on an ongoing basis, and it does not support limitations in **reaching**, handling, fingering, feeling, or operation of foot controls. . . . .
>
> As for **reaching**, [Plaintiff] was observed to have limited range of motion of the shoulders, however, her shoulders had no swelling or tenderness. Further, Ms. Ballou noted only a slight decrease in strength, at four out of

>   five in the right upper extremity and full five out of five strength in the left upper extremity. Therefore, this opinion is not persuasive.

(*Id*. at 24) (record citations omitted) (emphasis added).

>   The ALJ concluded that:
>
>   the [ ] residual functional capacity assessment is supported by the objective medical evidence, which does not corroborate [Plaintiff's] allegations, and by [Plaintiff's] reported activities of daily living, which also contradict her allegations. According to the objective evidence, the claimant's impairments are not as limiting as she alleges. The undersigned has considered all allegations, testimony, and evidence in making this determination.

(*Id*. at 25).

Plaintiff's sole argument is that, although "the ALJ did recite some of the medical evidence related to [Plaintiff's] shoulders . . . she failed to provide any meaningful analysis for any possible limitations resulting from [Plaintiff's] Rheumatoid Arthritis affecting her shoulders," and "[s]ince there is no discussion by the ALJ, no subsequent reviewer can see a logical bridge for how she accounted for [Plaintiff's] shoulders in her RFC." (Doc. 14, at 10). The portions of the ALJ's determination set forth above belie this claim. The ALJ extensively discussed Plaintiff's subjective complaints of symptoms in her shoulders, both through her testimony and within the medical evidence, and found them unsupported, contrasting Plaintiff's allegations of disability with her findings upon examination and her own reported daily activities. The ALJ explained how she found Plaintiff more limited than the state agency medical consultants and less limited than Ms. Ballou. She specifically explained why she found no further limitations were required on Plaintiff's reaching due to the objective medical evidence related to her shoulders. The ALJ's logical bridge between the RFC and Plaintiff's shoulders was quite clear. The ALJ was "not required to

9

discuss every piece of evidence," and the record reflects that the ALJ properly "considered all of the evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's rationale for the RFC relating to Plaintiff's shoulders well exceeds the substantial evidence standard.

Plaintiff now asks the Court to reconsider this same evidence and reach a different conclusion. Plaintiff's request that the Court remand on that basis is nothing more than a request to reweigh the evidence, and this Court must decline that request. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform."). "The ALJ was entitled to resolve [] evidentiary conflicts and did so." *Id*. Indeed,

> [t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations and quotation marks omitted).

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 21st day of September, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE